## AMERICAN COTTON CO-OP. ASS'N v. PLAINVIEW COMPRESS & WAREHOUSE CO. et al.

No. 4819.

Court of Civil Appeals of Texas. Amarillo.

Feb. 14, 1938.

Rehearing Denied March 28, 1938.

Ayres & Ayres, of Floydada, and Smith-deal, Shook & Lefkowitz, of Dallas, for appellant.

L. G. Mathews, of Floydada, and Callaway & Reed, of Dallas, for appellees.

STOKES, Justice.

Appellant, a Delaware corporation, filed this suit in the district court against appellees, the Plainview Compress & Warehouse Company and Panhandle Compress & Warehouse Company, Texas corporations, for alleged negligence of appellees in handling 511 bales of cotton that had been stored in the compress and warehouse building located at Floydada. It was alleged the compress had ceased operation but the building and premises were being used and operated as a state bonded warehouse. The cotton was destroyed by fire on the night of October 31, 1933. The acts of negligence charged by appellant were that appellees stored the cotton in a warehouse that was not properly walled up 'so as to prevent the entrance of transients, marauders, and idlers; that no guard was kept on duty to guard the cotton, building, and premises. It alleged negligence of appellees in not keeping barrels of water available and some one in attendance to use the water to extinguish any fire that may break out, and that they were negligent in not keeping the building lighted at night and in not discovering the fire before it had gained such headway as to be beyond control. Each act of negligence was alleged to be a proximate cause of the destruction of the cotton by fire.

Further allegations were to the effect that the cotton had been converted by both of the appellees, the conversion consisting of the allegation that the cotton had been deposited and stored with the Plainview Compress & Warehouse Company in the warehouse by the producers, and that the Plainview Compress & Warehouse Company had issued its negotiable receipts therefor, wherein it agreed that upon return of the receipts, properly indorsed, and the payment of all charges and liabilities due the warehouseman, the respective bales of cotton for which the receipts had been given would be delivered to the depositors or their order. It alleged that, after executing and delivering the receipts for the cotton, the Plainview Company delivered possession of the warehouse and cotton to the Panhandle Compress & Warehouse Company; that after the cotton was deposited in the warehouse and the receipts issued, such receipts were duly indorsed, transferred, assigned, and delivered to appellant; and that, although it had presented the receipts and demanded that the cotton be delivered to it, appellees had failed and refused to do so and thus to comply with the provisions of the receipts. The charge of conversion was based upon the allega-

tion that the cotton was originally delivered to, and received by, the Plainview Company and, before its destruction by fire, without the consent of the depositors or appellant, it had delivered possession of the cotton to the Panhandle Company.

Further allegations were to the effect that when the cotton was destroyed by fire it was in the possession of the Panhandle Company, such possession having been delivered to it by the Plainview Company, which was bound under its contract of bailment to keep it stored and deliver it only to such person or persons as might present the warehouse receipts issued therefor; that, by delivering the cotton to the Panhandle Company, the Plainview Company was guilty of conversion of the cotton, and by taking over possession of the cotton from the Plainview Company, the Panhandle Company was likewise guilty of its conversion.

Appellant alleged that the Texas Cotton Growers Gin Company was a subsidiary of and owned by the Texas Cotton Cooperative Association, and that the latter was a subsidiary of and owned by appellant, and that both of said corporations were agents of appellant in the handling of cotton. It further alleged that it was also engaged in aiding the United States government in making loans up to ten cents per pound on cotton, and that its two subsidiaries were acting as its agents in assisting such producers of cotton as were members of the Texas Cotton Cooperative Association to obtain loans on their cotton or to market the same, and that through its subsidiaries and the facilities of the Commodity Credit Corporation, it had made loans on the cotton. It alleged that through the negotiations for loans, the receipts for the cotton had come into its possession, and that by virtue of these transactions, as well as through assignments, it was the legal owner and holder of all of the receipts and entitled to the return of the cotton. It prayed for judgment for the value of the cotton, which was alleged to be $26,916.20, and for interest and costs of suit.

Appellees answered by general demurrer, a large number of special exceptions, pleas of limitation, and specially denied that at the time the cotton was destroyed by fire the Texas Cotton Co-operative Association had made loans on it. They alleged that subsequent to its destruction by fire, appellant and its subsidiary associa-

tions had willfully and fraudulently entered into a conspiracy to make purported loans on the cotton after it was destroyed by fire, and that they made payments of money on such purported loans and on purported purchases made subsequent to the fire, with full knowledge of the fact that the cotton had been destroyed. They alleged that certain insurance companies enterd into the conspiracy with appellant and its subsidiaries, and that it was agreed between them that any money that could be recovered in this suit by appellant would be paid to the insurance companies.

They further alleged that all of the conditions surrounding the warehouse which are complained of by appellant and alleged as bases of its charges of negligence were known to appellant and its subsidiaries, as well as to the insurance companies, and all parties dealing with the cotton before it was placed in the warehouse and before they became connected with any transactions in which it was involved. They further alleged that the warehouse was operated in the same manner as other warehouses of its class; that it had been inspected and approved by the state inspectors; and denied all charges of negligence and the existence of all facts upon which negligence was based. They further pleaded the fire and destruction of the cotton was the result of an unavoidable accident.

In answer to the charge of conversion, appellees denied that the Plainview Company ever entered into any contract with reference to the cotton involved or that either of appellants ever in any manner converted the cotton or did any act or thing which would have that effect. The answer was sworn to by the manager of both of the warehouse companies.

Upon exception and motion of appellant, all references in the answer to insurance and insurance companies were by the trial court stricken from the answer, and counsel and witnesses admonished not to mention or discuss the matter of insurance or insurance companies in any manner during the progress of the trial.

The case was submitted to a jury upon seventeen special issues, in answer to which the jury found, in effect, that the cotton was destroyed by fire as alleged; that 40 per cent. of it was middling in class and 60 per cent. strict middling; that the market value of middling cotton was $9.35 and of strict middling $9.75. It found that on Octo-

ber 31, 1933, when the fire occurred, the Panhandle Company was operating the warehouse and exonerated both of the appellees from negligence in any of the manners alleged by appellant and further found that the fire was an unavoidable accident. The verdict was returned on October 29, 1936. Both parties filed motions for judgment, appellant's motion specially stressing its right to judgment upon its pleading and the evidence in relation to conversion. The trial court, on November 12, 1936, entered judgment in favor of appellees, to which appellant duly excepted, gave notice of appeal, and has perfected its appeal to this court.

Under its third proposition appellant contends that the jury having found that the Panhandle Company had possession of the cotton at the time it was destroyed by fire, and it having failed to plead and prove it was rightfully in possession of the cotton, the trial court should have rendered judgment against the Panhandle Company in favor of appellant on the conversion count in its petition, without regard to whether the destruction of the cotton was caused by negligence.

The Plainview Compress & Warehouse Company was organized as a corporation under the laws of this state in 1924, and operated a compress and warehouse in a number of towns and cities in the western portion of the state, one being at Floydada, until July 31, 1933. On that date it conveyed all of its assets, including the warehouse and compress at Floydada, and everything it owned except money on hand, to the Panhandle Compress & Warehouse Company. The deed was executed and acknowledged July 31, 1933, but was not filed for record in any of the counties where its properties were located until the 31st of October, 1933. J. C. Wilson was its manager and was also the manager of its assignee, the Panhandle Compress & Warehouse Company. He testified, without contradiction, that he was general manager of the Panhandle Company during the fall of 1933 and up until the time of the fire. The receipts executed and delivered to the owners of the cotton when they deposited it in the warehouse were all signed, "Plainview Compress & Warehouse Company, by R. C. Covington." They were regular in form, in all respects complying with the statute, and showed on their faces to be receipts of the Plainview Compress & Warehouse Company, Inc. Wilson testified that he put R. C. Covington in charge of the warehouse and furnished the supplies. Upon being asked what connection he had with the Plainview Company, he said, in effect, that the Plainview Company was not doing business at Floydada at that time. He said he had been manager of the company before that time and was manager of both corporations. The record shows that the agreement by which the Plainview Company sold its properties to the Panhandle Company was made in May, 1933, and that the property was transferred on the 31st of July, 1933, which was considered the end of the season of 1932. Wilson testified that the Plainview Company never had anything to do with operating the plant at Floydada after July 31, 1933. He said that under the arrangement with Covington, he agreed to furnish the plant and supplies, and Covington was to operate the plant and furnish his time and labor, and that, under this agreement, he did furnish the plant and supplies. In explaining the circumstance of the warehouse receipts apparently being in the name of the Plainview Company, he said that he had not had time to have new receipts printed for the Panhandle Company and that, as the Plainview Company's receipts were not being used or needed by it, and in order to save the expense of printing new receipts, he furnished Covington the old blank receipts that were left by the Plainview Company when it ceased to do business. It is not shown by the record that there was any intention to perpetrate a fraud upon anyone, but that the receipts were thus utilized by Covington for the Panhandle Company as a matter of convenience and economy, although their use in the manner in which they were used exhibits considerable carelessness.

■■ It is a well-settled rule of law that one who is rightfully in possession of property, though the legal title thereto may be in another, is not guilty of conversion. In order to establish an allegation of conversion it must be shown that the person charged unlawfully and wrongfully exercised dominion and control over property of another to the exclusion of the exercise of the right of possession by the owner or some other person entitled to its possession. Wilson v. Moore et al., 57 Tex.Civ.App. 418, 122 S.W. 577; France v. Gibson, Tex.Civ.App., 101 S.W. 536; Stidham et al. v. Lewis, Tex.Civ. App., 23 S.W.2d 851; Compton v. Farrington, Tex.Civ.App., 16 S.W.2d 345; Zerr v. Howell et al., Tex.Civ.App., 88 S.W.2d 116.

■ It has also been held that a warehouseman, who receives goods for storage and delivers or intrusts them to another without the consent of the owner, breaches

his contract of bailment and is liable to the owner as for conversion. Thornton v. Daniel, Tex.Civ.App., 185 S.W. 585; Morris v. Burrows, Tex.Civ.App., 180 S.W. 1108.

■ The uncontradicted testimony of J. C. Wilson was to the effect that he was the manager of the Plainview Company until July 31, 1933, when he became manager of the Panhandle Company. He said that was considered the date upon which the cotton season of 1932 expired and a new season began, and that he was manager of the Panhandle Company all during the fall of 1933 up until the time of the fire, and that he made arrangements for opening the compress shed as a warehouse in the fall of 1933, putting Covington in charge of it. He said he furnished the supplies, including the receipts used by Covington and issued as evidence to the producers that their cotton had been stored in the warehouse. He said the Plainview Company was not in Floydada at that time, but before that he had been manager of it. He accounted for the use of the Plainview Company's blank receipts, and the record is wholly lacking in proof that the Plainview Company or any of its officers, agents, or representatives actually had anything to do with receiving, storing, or handling any of the cotton involved in this suit. The only basis for the claim of appellant that the Plainview Company received the cotton from the producers is that the receipts given by Covington when the cotton was received from the producers are receipts of the Plainview Company whose name, the record shows, was printed at the bottom and Covington's name written underneath. The record fails to show any conspiracy between the two companies as alleged by appellant, or that the producers of the cotton or anyone else was deceived by the receipts. The most that can be said in reference to the use of the Plainview Company's blank receipts is that it was a rather loose manner in which to conduct the business. If the testimony of Wilson is true, and the record fails to reveal it was controverted by any witness, the receipt by the Panhandle Company and its possession of the cotton at all times thereafter until it was destroyed by fire was lawful and therefore could not constitute conversion. Appellant alleged there was a secret understanding between the Plainview Company and the Panhandle Company, not known to the depositors of the cotton, that the cotton would be received by the former company and delivered to the latter, and that it was so received and delivered. This allegation is not supported by any evidence. The only evidence in the record which tends to establish the contention of appellant in reference to conversion is found in the fact that the receipts for the cotton purport on their faces to have been executed by the Plainview Company, coupled with the evidence and finding of the jury to the effect that, when the cotton was destroyed by fire on July 31, 1933, the Panhandle Company was in possession of it and was operating the warehouse in which it was stored. The contention of appellant under this assignment is that the trial court, under these facts, committed reversible error in not rendering judgment against the Panhandle Company in favor of appellant on the conversion count in appellant's petition without regard to whether the destruction of the cotton was caused by negligence. We cannot accede to this contention. The record clearly shows the cotton was delivered to the Panhandle Company by the producers regardless of the fact that the receipts issued by it purport to have been issued by the Plainview Company. Its receipt of the cotton being lawful, the principal element of conversion is lacking, and under no reasonable construction of the evidence in the case can it be said that the Panhandle Company was guilty of conversion of the cotton at any time.

Under its fourth and fifth propositions, appellant contends that the Plainview Company having entered into contracts of bailment with the depositors of the cotton as evidenced by the warehouse receipts, and the jury having found that, at the time of the fire, the cotton was in the possession of the Panhandle Company, the trial court committed error in refusing to render judgment in favor of appellant against the Plainview Company on the conversion count in its petition without regard to its allegations of negligence.

■ As before stated the essential element of conversion is that the party charged with conversion must be shown to have had possession of, exercised dominion over, or disposed of the property unlawfully. Certainly no recovery for conversion could be had in the absence of a showing that the person charged with conversion had at some time and in some manner taken possession of the property alleged to have been converted. In this case, as before stated, all of the testimony in regard to the delivery of the cotton to either of the appellees by the producers is to the effect that it was delivered to the Panhandle Company, save only the circumstance that the receipts were upon the

blanks of the Plainview Company, whose name was printed at the bottom, under which, upon a printed line, appeared the name of R. C. Covington. It is not shown that Covington had anything to do with the Plainview Company or was employed by it. Covington testified that he had authority to sign the receipts and that his son and also Mr. Marshall had authority to sign them. It was agreed by counsel in open court that the receipts bore the name of the Plainview Compress & Warehouse Company, by R. C. Covington, and that Covington's name was written either by Covington or by some one at the warehouse who had authority to write his name at the places where it was written. Appellant contends that this testimony and the agreement of counsel proved the authority of Covington to execute the receipts in the name and on behalf of the Plainview Compress & Warehouse Company. We do not agree with such interpretation. The testimony of Covington and the agreement of counsel clearly refer to authority of the Panhandle Compress & Warehouse Company and not to that of the Plainview Compress & Warehouse Company.

The only theory upon which appellant seeks to establish a conversion is based upon its allegation that the cotton was originally placed in the possession of the Plainview Company and by it delivered to the Panhandle Company. The act of conversion charged necessarily involves a delivery of the cotton by the Plainview Company and a simultaneous receipt of it by the Panhandle Company. One could not take place without the other. The cotton could not have been delivered to the Panhandle Company by the Plainview Company unless the Panhandle Company, at the same time, received it. As we have said, the testimony showed the cotton was originally delivered by the producers, not to the Plainview Company, but to the Panhandle Company, and the possession of the latter company, from the time it was so delivered until it was destroyed by fire, was shown by undisputed evidence to be lawful in every respect. The Panhandle Company, therefore, could not be guilty of converting the cotton by unlawfully receiving it from the Plainview Company and, since any act of conversion by the Plainview Company is necessarily based upon a showing that it delivered possession of the cotton to the Panhandle Company and as the Panhandle Company clearly accounts for its receipt of the cotton from another and different source, the contention of appellant that the trial court erred in refusing to render

judgment in its favor against the Plainview Company on the conversion count in its petition is untenable. Furthermore, appellant was not entitled to a judgment unless it established the allegations of its pleading to the effect that the Plainview Company delivered possession of the cotton to the Panhandle Company. The record wholly fails to show any act of such delivery. Appellant does not direct our attention to any evidence of such an act and we have found none in the record. Its only contention in this respect is that the name of the Plainview Company being appended to the warehouse receipts established the fact of that company's receipt of the cotton from the producers and that this, coupled with the finding of the jury that the Panhandle Company had possession of the warehouse and the cotton at the time of the fire necessarily established that delivery of the cotton by the Plainview Company to the Panhandle Company took place at some time between its delivery to the Plainview Company and its destruction by fire.

We do not agree with appellant in this contention. Under its pleading and all of its contentions, the alleged act of conversion of the cotton necessarily involves both companies. Without an unlawful receipt of the cotton by the Panhandle Company from the Plainview Company, the act of conversion alleged could not have taken place. Without such receipt by the Panhandle Company, the Plainview Company, under the pleadings, could not be guilty of conversion because the act of conversion charged against both of the companies was of such nature as that it could not be separated into two acts. The Plainview Company could not have delivered the cotton to the Panhandle Company without the simultaneous receipt of it by the latter company. In order to establish that one of them was guilty of the conversion alleged, appellant would have to show a conversion by both of them. It follows, therefore, that when the Panhandle Company established its lawful receipt and possession of the cotton, both companies were exonerated from the charge of conversion. We, therefore, overrule all of appellant's assignments and propositions pertaining to conversion of the cotton by either of the appellees.

Appellant contends that the Plainview Company is in no position to deny the execution of the receipts or that R. C. Covington had authority to sign its name to them because their pleadings in that respect were not sworn to as provided by subdivi-

sion 8 of art. 2010, R.C.S.1925. The answer denied the Plainview Company ever entered into any contract with reference to the cotton or ever converted any of the cotton involved in the suit. It was sworn to by J. C. Wilson. It is doubtful if the answer of appellees was sufficient under the statute, but, whether it was or not, the evidence refuting the authority of Covington to issue the receipts in the name of the Plainview Company, and fully accounting for the possession of the cotton by the Panhandle Company, was admissible on behalf of the Panhandle Company without a sworn plea. When the Panhandle Company exonerated itself from the charge of conversion, the case against the Plainview Company necessarily fell because, as we have stated, under the pleading in the case, there could not have been a conversion by the Plainview Company without the establishment also of a conversion by the Panhandle Company.

The thirteenth and twenty-first propositions of appellant pertain to and allege error of the trial court in refusing to set aside the answers of the jury to special issues Nos. 11 to 17 pertaining to negligence and unavoidable accident because of improper argument of counsel for appellees to the jury upon the ground that statements made by them had subtle reference to the fact the cotton had been insured and that the interests of certain insurance companies were involved in the case. In the argument counsel criticized appellant's action in delaying payment to the producers for some of the cotton until sixty to ninety days after it had been destroyed by fire and said, in effect, that the circumstance threw great suspicion upon the entire transaction. He said that some of the men whose cotton appellant claimed to have purchased before the fire did not receive pay for it until in January, 1934, while most of them received their money immediately upon delivering the cotton, and criticized as mysterious and suspicious the statements of some of the witnesses of appellant to the effect that the cotton was not paid for until the witnesses heard from Dallas or New Orleans. Counsel for appellant objected to the argument upon the ground there was no testimony to support it. The objection was immediately sustained by the court and the jury instructed accordingly. The bills of exception presenting this matter contain other objections to the statements above detailed and others indulged in by counsel for appellees in their argument upon the ground that appellees were referring to insurance and insurance companies in an effort to suggest to the jury that the insurance companies had in some manner conspired with appellant and its subsidiaries to pay for cotton that was not covered by insurance nor purchased by appellant or its subsidiaries but was paid for after it had been destroyed by fire. The trial court qualified the bills of exception to the effect that the objections other than the one first above mentioned were not presented until the motion for a new trial was filed.

It will be remembered that, in addition to the allegations contained in the answer of appellees concerning insurance and the connection of insurance companies with the transactions involving the cotton which had been stricken from the pleadings by the court before the trial began, appellees also alleged a conspiracy between appellant and its subsidiary companies in regard to purchasing and paying for some of the cotton after it had been destroyed by fire. This contention of appellees was not submitted to the jury and it was, therefore, not a proper subject for argument. After the argument was closed, however, and without request of any of the attorneys in the case, the court instructed the jury not to take into consideration any of the argument that was not supported by the evidence. We have considered all of the assignments of error in reference to the matter of improper argument, and it is our conclusion that if they present error, it is not such as to warrant a reversal of the case. Counsel for appellees vigorously deny any intention of referring to insurance or insurance companies. Neither insurance nor insurance companies was mentioned in the argument and most, if not all, of the statements made by counsel are susceptible of application to the conspiracy charge contained in their pleading. There being no special issue submitted to the jury concerning either insurance or acts of conspiracy, the argument in reference thereto was improper but, in our opinion, was not of such inflammable nature as to influence the jury upon their consideration of the special issues that were submitted. These assignments are, therefore, overruled.

We have carefully considered all of the assignments presented by appellant and, while we have not discussed them separately, they are divisible into the two principal questions we have discussed, viz., the allegations concerning conversion and the assignments of error directed to the argument of counsel. We have failed to find any re-

versible error presented by any of them, and the judgment of the trial court is in all respects affirmed.