Ronald C. BRANHAM and Glenn Foster, Inc., Appellant,

v.

Larry Wayne PREWITT and Gary Lynn Prewitt, Appellees.

No. 16629.

Court of Appeals of Texas, San Antonio.

June 9, 1982.

Rehearing Denied June 28, 1982.

Roger W. Wooldridge, A. W. Worthy, San Antonio, Kip Eddy, for appellant.

Joseph Chacon, Jr., San Antonio, for appellee.

Before CADENA, C. J., and KLINGEMAN and ESQUIVEL, JJ.

## OPINION

KLINGEMAN, Justice.

This is a conversion suit brought by Larry and Gary Prewitt against Ronald C. Branham, Glenn Foster, Inc., and Kip Eddy. Judgment was in favor of the Prewitts in the trial court against all three defendants; however, only Branham and Glenn Foster, Inc. have perfected appeals to this court.[1]

The controversy herein involves the formation of a corporation, Classic Coachworks, Inc., by Ronald C. Branham, Kip Eddy, and Gary Prewitt. Gary Prewitt owned and operated an automobile repair business, the Corvette Shop, when he, Branham, and Eddy decided to form the corporation in the first part of 1977. The corporation was for the purpose of repairing and buying and selling exotic automobiles. Prewitt agreed to put the assets of his repair business and his time into the corporation for a 50% ownership interest of the corporation. Branham agreed to contribute $50,000 for a

---

1. Kip Eddy did not perfect an appeal and this judgment has become final as to Kip Eddy.

25% share and Eddy agreed to manage the business for a 25% share. The parties also agreed to carry Gary Prewitt's interest in the corporation in the name of Larry Prewitt, Gary's brother, because Gary owed some money to the Internal Revenue Service. The business began functioning as Classic Coachworks, Inc. sometime in February, 1977. The corporate certificate, however, was filed March 15, 1977. Prewitt also assigned his interest in the existing lease to the corporation. During February, 1977, Branham negotiated for a corporate loan for $50,000 from Glenn Foster, Inc. Charles Eldridge of Glenn Foster, Inc. visited the place of business of Classic Coachworks, Inc. and was given a list of the assets of the business. Eldridge approved the loan to the corporation and Glenn Foster, Inc. took a security interest in the assets located on the premises. Mr. Eldridge met Gary Prewitt when he visited the premises, but the negotiations concerning the loan were with Branham only. Only Branham and Eddy signed the security agreement, Prewitt not taking part in the loan transaction. Prewitt and Eddy also personally guaranteed the loan from Glenn Foster, Inc. Prewitt testified that he did not know that Branham borrowed money by using the business assets as collateral and that he was not even aware of the loan transaction until months after it was made. It is Brenham's contention that the corporate loan, secured by the business assets, was a part of the agreement made between the parties when the corporation was first formed and that Prewitt was fully aware of the transaction.

The business was operated for several months, but at one point, sometime in May or June of 1977, Eddy withdrew from the business and left town. Branham and Eddy contend that the parties had all agreed, before Eddy left town, to change the structure of the corporation, with each party owning a ⅓ interest. Prewitt does not agree with such contention. The corporation eventually began losing money and in September, 1977, Branham began liquidating the assets of the corporation. Branham argues this was his privilege under the initial agreement. Prewitt, however, urges there was no such agreement and that he allowed Branham to continue the liquidation only because of threats of bodily harm made by Branham to Prewitt. Branham sold most of the tools located on the business premises, the corporation's leasehold on the premises, and three motor vehicles.

The Prewitts then instituted this suit, alleging Branham had converted their business assets including the automobiles and leasehold interest, by liquidating such assets in order to pay off the loan to Glenn Foster, Inc. Further, the Prewitts alleged Glenn Foster, Inc. was liable for conversion by attempting to take a security interest in such assets. We need not be concerned with the conversion allegations against Kip Eddy because he did not perfect an appeal. The jury found all three defendants liable for conversion. Based upon the verdict, the trial court rendered judgment in favor of the Prewitts. The issues pertinent to Branham's appeal are different from those involved in Glenn Foster, Inc.'s appeal. Therefore, we will discuss the two separately.

### GLENN FOSTER, INC.

Appellant Glenn Foster, Inc. asserts twelve points of error. The controlling question in Foster's appeal, however, is whether the mere taking of a security interest can constitute conversion absent further affirmative acts with regard to the property involved.

The case against Foster is based solely on the jury's affirmative answer to special issue number ten which reads as follows

Do you find from a preponderance of the evidence that by the preparation of the instruments known as Plaintiffs' Exhibit No. 56 and Defendant Foster's Exhibit No. 2 by Glenn Foster, Inc., Defendant Glenn Foster, Inc., converted the property therein described?

In connection with this question you are instructed that to constitute a conversion, it is not necessary that there be a manual taking of the property in question, nor is

it necessary for a person to have had, at any time, actual possession of the property to be held liable for the conversion thereof. Any unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of or inconsistent with the owner's rights is in law a conversion. Answer "It did" or "It did not."

WE, THE JURY, ANSWER: It did.

Plaintiff's Exhibit No. 56 and Defendant Foster's Exhibit No. 2 are U.C.C. forms under the terms of which Classic Coachworks Corp. or Classic Coachworks, Inc. granted to Glenn Foster, Inc. a security interest in

All shop tools, equipment, machinery, molds, furniture and fixtures and all inventory of new and used parts whether listed hereon or not together with all accessions, additions, replacements and substitutions thereto and therefor, located on the premises at 11403 San Pedro, San Antonio, Bexar County, Texas.

The evidence shows that Glenn Foster, Inc., represented by Charles Eldridge, attempted to take a security interest in the assets of this automobile repair business. Glenn Foster, Inc. filed financing statements with the Secretary of State and the Bexar County Clerk and executed a security agreement, obtaining the signatures of Branham and Eddy only. The security agreement was executed February 24, 1977. Glenn Foster, Inc. never took possession of the property covered in the security agreement, nor did it foreclose or even threaten to foreclose on such property.

The central issue as far as Glenn Foster, Inc. is concerned is whether the mere taking of a security interest can constitute conversion, absent further affirmative acts taken with regard to the property. We have found no cases in Texas relating to this question. Therefore, we must look to the general rules of conversion and attempt to apply them to the facts of this case.

Conversion is the wrongful exercise of dominion and control over another's personal property, to the exclusion of or inconsistent with the rights of the owner. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444 (Tex.1971); *McVea v. Verkins*, 587 S.W.2d 526 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Beam v. Voss*, 568 S.W.2d 413 (Tex.Civ.App.—San Antonio 1978, no writ); *Adam v. Harris*, 564 S.W.2d 152 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.); *American Cotton Co-op Association v. Plainview Compress & Warehouse Co.*, 114 S.W.2d 689 (Tex.Civ.App.—Amarillo 1938, writ dism'd);[2] *American Surety Co. v. Hill County*, 254 S.W. 241 (Tex.Civ.App.—Dallas 1923), aff'd, 267 S.W. 265 (1924). To constitute a conversion, it is not necessary that there be a manual taking of the property in question. *Waisath v. Lack's Stores, Inc. supra; Beam v. Voss, supra; Sharkey v. Hollums*, 400 S.W.2d 353 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.). The gist of a conversion is not the acquisition of the property by the wrongoer, but the wrongful deprivation of a person of property which he is entitled to possess. *Ligon v. E. F. Hutton & Co.*, 428 S.W.2d 434 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

In *American Surety Co. v. Hill County*, supra, the court stated:

... conversion is an offense against the possession of the property alleged to have been converted. It also follows that it is not necessary that there be an actual manual taking of personal property to constitute a conversion, but there must be such active interference with the owner's right of property or control as will deprive him of its free use and enjoyment. Nor is it necessary that the property be applied to the use of the one charged with conversion, nor even of a third person; the element of controlling influence being the owner's loss and not the wrongdoer's benefit. Bowers on Law of Conversion, § 2.

---

**2.** "Certainly no recovery for conversion could be had in the absence of a showing that the person charged with conversion had at some time and in some manner taken possession of the property alleged to have been converted...." 114 S.W.2d at 693.

It must also be remembered that every taking of property from the possession of the owner, or the one entitled to possession, is not necessarily a conversion of the property. One person might hold possession of the property of another not inconsistent with the rights of the owner. Generally, before there can be a conversion of property, there must be an act of malfeasance and not a mere nonfeasance; a positive wrong and not the mere omission of what was right. This act of malfeasance may be committed by a tortious detention of the property from the owner, or by a destruction of the property, or by an exclusion or defiance of the owner's right, or the withholding of possession under a claim of title inconsistent with that of the owner.

*Id.* at 246.

We have found no cases in Texas holding that the mere filing of a lien or other claim of title constitutes conversion. The general rule is set forth in 18 AM.JUR.2d Conversion § 32 (1965) as follows: "The mere act of taking a mortgage upon property from someone other than the true owner does not constitute a conversion as against the latter where the mortgagee does not take possession of the property or intermeddle with it in any way."

▇▇▇ There is out of state authority for the rule that the mere taking of a mortgage on personal property, without taking further affirmative acts with regard to the property, does not amount to a conversion of such property. *See Hall v. Merchants State Bank,* 199 Iowa 483, 202 N.W. 256 (1925); *Carroll v. M & J Finance Corp.,* 233 S.C. 200, 104 S.E.2d 171 (1958); *Richstein v. Roesch,* 71 S.D. 451, 25 N.W.2d 558 (1946)[3] Annot. 38 A.L.R. 1096 (1925). We agree with this rule. We hold that the taking of

a security interest on personal property without taking further steps to interfere with the owner's right to the property, is not sufficient to constitute an actionable conversion. In the case before us there has not been any such interference with plaintiff's rights in the property to amount to a conversion.

The trial court erred in granting plaintiff a judgment against Glenn Foster, Inc. The courts judgment insofar as it pertains to Glenn Foster, Inc. is reversed, and judgment here rendered that plaintiff take nothing against Glenn Foster, Inc.

## RONALD C. BRANHAM

Branham brings this appeal on thirty points of error. After an examination and consideration of such points we have concluded that this portion of the case must also be reversed because of certain errors of the court which will be hereinafter discussed.

By a number of points of error appellant Branham complains of the trial court's failure to properly submit issues to the jury concerning the ownership of the property in question, the time of the alleged conversion, and the identity and nature of the type of property allegedly converted.

Branham initially urges that an issue inquiring whether at the time of the alleged conversion appellees owned or were entitled to the property should have been submitted to the jury. Branham contends that at the time of the alleged conversion, the property had been transferred by appellees to Classic Coachworks, Inc. The issue that was submitted to the jury inquired whether appellees were the owners of the property at the time of or immediately prior to the time of the organization of the corporation. The jury answered in the affirmative. The evi-

3. In *Richstein v. Roesch,* 71 S.D. 451, 25 N.W.2d 558 (1946), the Court held:

We are satisfied that while manual possession of the property is not necessary to constitute conversion something more than the mere claim or filing of a mechanic's lien is necessary . . .

and further,

'Someone must have taken it into possession' said the court, 'and deprived plaintiffs of it, by removal or otherwise, under circumstances which show that the defendant was legally chargeable with such deprivation.' As to the property here in question defendant by filing and assigning the purported lien did not assume dominion over the property in disregard or defiance of plaintiff's rights.

dence does not conclusively establish the time of the organization of the corporation. The problem with the issue as submitted is that we do not know when the alleged conversion took place.

■ Ownership of the property at the time of the conversion is material as bearing on the issue of conversion. *Terry v. Witherspoon*, 255 S.W.2d 471 (Tex.Civ.App.—Amarillo 1923), *aff'd*, 267 S.W.2d 973 (1925). In order to recover on the theory of conversion, the plaintiff has the burden to obtain jury findings or to establish by conclusive evidence that he was the owner of the property alleged to have been converted. *Izaks v. National Bank of Commerce*, 547 S.W.2d 345 (Tex.Civ.App.—Tyler 1977, no writ). The law is well established that in cases of conversion of property, the establishment of the market value of the property at the place and on the day of conversion is essential to a recovery. *Shaw's D. B. & L., Inc. v. Fletcher*, 580 S.W.2d 91 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Engineered Plastics, Inc. v. Woolbright*, 533 S.W.2d 906 (Tex.Civ.App.—Tyler 1976, no writ); *Peter Salpeter Energy Co. v. Crystal Oil Co.*, 524 S.W.2d 383 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

■ The special issue pertaining to damages as submitted to the jury required the jury to find what was the reasonable market value, if any, in Bexar County, Texas, of the property in question converted by Branham. There is no special issue inquiring or finding the date the conversion took place, and the evidence clearly does not establish this as a matter of law. The market value of the property at the place of and on the date of conversion was never established. The trial court erred in its submission of the issues above discussed.

■ Branham further alleges that the trial court erred in allowing the jury to consider the lease as a part of the property that was converted. We agree. Conversion is a cause of action relating to the

wrongful possession of chattel and does not apply to realty. *Rodriguez v. Dipp*, 546 S.W.2d 655 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.); W. PROSSER, TORTS § 15 (4th Ed. 1971); 1 Restatement (Second) of Torts § 222A (1965).

■ Branham further urges error of the trial court in its failure to submit issues pertaining to appellees consent and acquiescence to the sale of corporate assets by assisting in the liquidation. Branham pled that the Prewitts had consented and acquiesced in the sale of the corporate assets by assisting in such action.[4] There is evidence that in September, 1977, Branham told Prewitt that he was closing down the corporation and liquidating the assets. Prewitt worked for a short time after that before he quit and assisted in the liquidation by removing some of the automobiles to be sold. There is evidence that he purchased two truckloads of such equipment. Where an owner, expressly or impliedly, assents to or ratifies the taking, use or disposition of his property, he cannot recover for the conversion therefore. *Gulf C & S. F. R. Co. v. Pratt*, 183 S.W. 103 (Tex.Civ.App.—Beaumont 1916, writ ref'd). The trial court erred in refusing to submit such issues.

Because of the errors of the court hereinabove discussed this case must be reversed and remanded as to the Branham appeal. In view of the fact that this portion of the case is to be remanded we deem it not necessary to discuss Branham's other points of error.

The courts judgment as to appellant Glenn Foster, Inc. is reversed and judgment rendered that appellees take nothing against Glenn Foster, Inc. The remaining portion of the judgment, which pertains to the appeal by appellant Ronald C. Branham, is reversed and that part of the judgment is severed and remanded to the trial court for a new trial.

4. Branham also pled estoppel, waiver, and ratification and has points of error complaining of the court's failure in not submitting issues and instructions in regard to these defenses.