**Reversed and Remanded in Part, Vacated and Dismissed in Part, and Majority and Concurring Opinions filed September 17, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00184-CV

---

### GEORGE E. HILBURN, Appellant

### V.

### STORAGE TRUST PROPERTIES, LP, Appellee

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-36631**

---

### MAJORITY OPINION

This lawsuit involves the disposal of personal property from storage units without the consent of the property owner. In three issues, the property owner, George E. Hilburn, challenges the trial court's grant of final summary judgment in favor of the storage unit owner, Storage Trust Properties, LP. Concluding that the trial court erred in granting summary judgment on Hilburn's breach of contract and noncontractual claims and that there is no justiciable controversy as to Hilburn's

request for declaratory judgment, we reverse and remand the trial court's judgment in part, vacate the judgment in part, and dismiss the appeal in part for want of jurisdiction.

## *Background*

Hilburn leased five storage units in Webster, Texas from Storage Trust. Parts of the storage facility were subsequently flooded during a rain event in May 2015. According to Hilburn, his units took on about a foot of water that receded quickly. Hilburn paid the June rent for all five units. Two days after he paid the rent, Hilburn received a call from a Storage Trust representative regarding the flood. Hilburn was notified that some of the contents of his units had been damaged. The caller notified Hilburn that he previously should have received a letter from Storage Trust informing him of the flooding and that he needed to remove his property from the units by June 10, 2015. The letter was dated May 20, 2015, yet it stated, "We are scheduling appointments for . . . May 19, 2015. You must . . . be prepared to remove or dispose of any damaged goods." Hilburn responded that he had not received the letter and he could not remove his property by the time requested by Storage Trust, in part because of a medical emergency for his wife. According to Hilburn, he was told "not to worry."

Approximately two weeks after he received the first call, Hilburn received a second call from another Storage Trust representative. The representative told Hilburn that the locks on his units had been cut and the contents of the units were being thrown away. When Hilburn went to the storage facility, he asked for additional time to remove his property. He left and returned four days later with a moving truck. When he returned, much of his property had been removed from the units, and some of it had been hauled away to the dump. According to Hilburn, some of his property that had been disposed of was not damaged, and some of it

was damaged but salvageable.

Hilburn filed suit, bringing claims against Storage Trust for breach of contract, conversion, waiver, estoppel, promissory estoppel, and violations of the Texas Deceptive Trade Practices Act (DTPA).[1] Hilburn also sought a declaratory judgment that he had paid the June rent. He sought damages of $150,000, plus attorney's fees and costs.

Storage Trust filed a traditional motion for summary judgment challenging Hilburn's claims on the grounds that (1) Hilburn expressly agreed that in the event of an emergency, Storage Trust could remove Hilburn's locks, enter the storage units, and take action to preserve the facility; (2) Hilburn agreed to a damages cap for any loss related to claims resulting from fraud, willful injury, or willful violations of law; (3) Hilburn cannot recover attorney's fees from Storage Trust; (4) the economic loss rule bars Hilburn's conversion, waiver, estoppel, promissory estoppel, and DTPA claims; and (5) Hilburn is not entitled to a declaratory judgment on an undisputed fact. Hilburn objected to certain evidence in support of the motion as hearsay and responded in relevant part that (1) there is a fact question regarding whether the flooding event constituted an emergency authorizing Storage Trust to enter the units and dispose of Hilburn's property under the five lease agreements; (2) Hilburn did not agree to waive or limit liability resulting from Storage Trust's fraud, willful injury, or willful violations of law; (3) Hilburn is not prohibited from recovering attorney's fees as to all his claims; (4) the economic loss rule does not apply to Hilburn's noncontractual claims; and (5) Hilburn would accept a stipulation that he made the June 2015 rent payments. The trial court granted Storage Trust's motion for summary judgment and rendered final summary judgment disposing of all Hilburn's claims.

---

[1] Tex. Bus. & Com. Code §§ 17.01–.955.

*Discussion*

In one issue, Hilburn challenges the trial court's grant of summary judgment as to each of his claims. We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.*

The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *Id.* (citing Tex. R. Civ. P. 166a(c)). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). Summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Grynberg v. Grey Wolf Drilling Co.*, 296 S.W.3d 132, 135–36 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

## I.    Fact Question on Breach of Contract

Storage Trust moved for summary judgment on the basis that it did not breach the lease agreements. *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (listing elements of breach of contract). Storage Trust relies on the following language from the lease agreements:

> In the event Occupant shall not grant access to the Premises as required or in the event of an emergency . . . , Owner [or] Owner's

4

Agents . . . shall have the right, but not the obligation, to remove Occupant's locks and enter the Premises for the purpose of examining the premises or the contents thereof or for the purpose of making repairs or alterations to the Premises and taking such other action as may be necessary or appropriate to preserve the Premises or to comply with applicable law including any applicable local, state or federal law or regulation governing hazardous or toxic substance, material, or waste, or to enforce any of Owner's rights.

According to Storage Trust, the flooding event constituted an emergency under the lease agreements, which allowed Storage Trust to enter the storage units and dispose of Hilburn's "hazardous property due to mold." But Storage Trust did not present any evidence that there were hazardous materials in the storage units or that there was mold.

Storage Trust relied on the following deposition testimony from Hilburn:

[E]verything was going to get mold, and they were worried about it the last time. We're going to have mold. I said, fumigate and remedy. [S]tart . . . drying out that side. When its dried out, stick my stuff in there. I'll continue to pay rent the whole time. . . . Let me move my stuff into another unit, and I will pay you. [They said,] No, we can't do it. Everything's got to go, everything.

At most, this testimony creates a fact question regarding whether there would be hazardous materials—mold—in the storage units in the future. There is no evidence that Hilburn's property contained mold or showed signs of mold at the time Storage Trust entered the units. Accordingly, Storage Trust did not show it was entitled under the lease agreements to dispose of Hilburn's property. We conclude there is a fact question regarding whether Storage Trust breached the lease agreements.

Storage Trust alternatively argued that even if it breached the lease agreements, the trial court should limit any damages to $5,000 per storage unit under the terms of the lease agreements. Storage Trust further argued in the

5

alternative that Hilburn is not entitled to attorney's fees for his breach of contract claim.[2] Because the trial court granted summary judgment, ruling Hilburn could not recover on his breach of contract claim, the trial court did not reach these issues.

We must review all summary judgment grounds on which a trial court ruled that are dispositive of the appeal. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). But we have the discretion to decline to consider summary judgment grounds on which the trial court has not ruled. *See Cohen v. Tour Partners, Ltd.*, No. 01-15-00705-CV, 2017 WL 1528776, at *10 (Tex. App.— Houston [1st Dist.] Apr. 27, 2017, no pet.) (mem. op.); *In re TCW Glob. Project Fund II, Ltd.*, 274 S.W.3d 166, 170 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (noting "[t]he court of appeals will usually decline to address the alternative grounds [for summary judgment] and, instead, remand the case to the trial court for consideration of the additional grounds" unless the court of appeals decides to rule on the alternative grounds not expressly ruled on "in the interest of judicial economy"); *cf. Cates*, 927 S.W.2d at 626 ("We hold that the appellate court may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy."). Given that there is a fact question on breach and Hilburn's entitlement to damages, and attorney's fees is contingent, in part, on the resolution of that issue, we decline to consider these summary judgment grounds that were not decided by the trial court. *See Cohen*, 2017 WL 1528776, at *10 (declining to address summary judgment grounds on which the trial court did not rule "[g]iven the complex procedural history of [the] case and its related case as well as [court of appeals'] resolution of the other issues in the appeal").

---

[2] *See* Tex. Civ. Prac. & Rem. Code § 38.001 (allowing recovery of attorney's fees as to breach of contract claims against an individual or corporation).

## II. Economic Loss Rule Inapplicable to Conversion, Waiver, Estoppel, Promissory Estoppel, and DTPA Claims

Storage Trust moved for summary judgment as to Hilburn's noncontractual claims of conversion, waiver, estoppel, promissory estoppel, and DTPA violations on the basis that they are barred by the economic loss rule because, according to Storage Trust, the only injury alleged by Hilburn is economic loss resulting from breach of contract. Hilburn contends that the economic loss rule only applies to negligence claims arising from the contract itself and not to his other claims.

The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy. *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). *But see Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011) ("[T]he 'economic loss' rule has never been a general rule of *tort* law; it is a rule in *negligence* and *strict product liability*.") (emphasis in original) (quoting William Powers, Jr. & Margaret Niver, *Negligence, Breach of Contract, and the "Economic Loss" Rule*, 23 Tex. Tech. L. Rev. 477, 492 (1992)). But the rule does not bar all claims arising out of a contractual setting. *Chapman Custom Homes*, 445 S.W.3d at 718. As the supreme court has said, "a party [cannot] avoid tort liability to the world simply by entering into a contract with one party [otherwise the] economic loss rule [would] swallow all claims between contractual and commercial strangers." *Id.* (quoting *Sharyland*, 354 S.W.3d at 419). Thus, a party states a noncontractual claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit. *Id.*

In *Chapman Custom Homes*, the supreme court recognized that "a common

law duty to perform with care and skill accompanies every contract and . . . the failure to meet this implied standard might provide a basis for recovery in tort, contract, or both under appropriate circumstances." *Id*. (citing *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947)). For example, in that case, a plumber who installed a plumbing system in a house being built assumed an implied duty not to flood or otherwise damage the home. *Id*. That duty was independent of any obligation in the plumber's subcontract with the builder, and the alleged damages caused by the breach of that duty extended beyond the economic loss of any anticipated benefit under the plumbing contract. *Id*. at 718–19. Thus, the economic loss rule did not apply.

**Factual Allegations**. We turn to the allegations in this case to determine whether Hilburn alleged that Storage Trust breached a duty independent of the lease agreements. Hilburn alleges that the flooding event occurred in May 2015. Hilburn paid the June rent for all the units. He was not notified that the property had flooded until June 7, 2015, when he was contacted by a representative, Bryan, from Storage Trust, who told Hilburn about the letter that purportedly had been mailed in May. According to Bryan, Hilburn would need to remove his property from the storage units by June 10. Hilburn told Bryan he did not receive the letter and he could not move everything by June 10 because of the size of the units, the amount of property, and his wife's medical emergency. Bryan told Hilburn "not to worry."

On June 20, another representative from Storage Trust, Carolyn, called Hilburn and told him the locks had been cut from his units and his property was being thrown away. Hilburn went to his storage units but could not stop Storage Trust from removing his property, which was being placed outside the units. He returned with a truck on June 24 to sort through his property. The contents of four

of the units had been moved outside, and the contents of at least two units had been hauled to a dump. Everything was being thrown away by Storage Trust representatives, whether it was damaged or not.

As discussed, under the lease agreements, Storage Trust had the right to enter the storage units "in the event of an emergency" "for the purpose of examining the [storage units] or the contents thereof or for the purpose of making repairs or alterations to the [storage units] and taking such other action as may be necessary or appropriate to preserve the [storage units]." Nothing in the lease agreements explicitly authorizes Storage Trust to take possession of and dispose of property in the storage units unless the tenant is in default. We turn to the allegations specific to each of Hilburn's claims to determine whether Hilburn alleged a duty of Storage Trust independent of any obligation in the lease agreements. *See id*.

**Conversion**. Hilburn alleges that Storage Trust disposed of a large amount of his personal property regardless of whether it was damaged or "hazardous." The tort of conversion involves the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of and inconsistent with the other's superior rights in the property. *See Frankoff v. Norman*, 448 S.W.3d 75, 85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (listing elements). The gist of a conversion claim is not the actual taking of property by the defendant but the wrongful deprivation of property from a person who is entitled to possession of the property. *Branham v. Prewitt*, 636 S.W.2d 507, 510 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.). There must be such active interference with the owner's right of control to deprive the owner of the free use and enjoyment of the owner's property. *Id*.

Hilburn has alleged in essence that Storage Trust took his property, and in

unilaterally deciding to destroy or dispose of it, wrongfully interfered with his right of control and deprived him of the free use and enjoyment of his property.[3] *See id*. Storage Trust has pointed to no provisions in the lease agreements that allowed it to do so under these circumstances.

**Waiver, Estoppel, and Promissory Estoppel**. Hilburn alleges that Bryan, as a representative of Storage Trust, told Hilburn not to worry about removing his property from the storage units, and Storage Trust accepted Hilburn's June rent and kept it, despite Storage Trust's knowledge about the flooding in May. Hilburn alleges that he relied on Storage Trust's actions and representations under the lease agreements after the flooding incident in May. Thus, Storage Trust would be estopped from relying on the lease agreements to the degree they were inconsistent with Storage Trust's post-flooding representations to Hilburn.

Waiver, estoppel, and promissory estoppel are three distinct but related concepts. Waiver is an affirmative defense that may be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with that right. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). A waivable right may spring from law or, as in this case, from a contract. *Id*. A party's express renunciation of a known right can establish waiver. *Id*. Silence or inaction, for so long a period as to show an intention to yield a known right, may be proof of waiver. *Id*.

Estoppel arises when, by fault of one, another is induced to change his or her position for the worse. *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 736

---

[3] Storage Trust also argues that Hilburn waived any conversion claims under the lease agreements. We disagree. Hilburn agreed under the lease agreements that "all personal property is stored by occupant at occupant's sole risk." He also agreed to limit Storage Trust's liability for its "active or passive acts, omissions, negligence or conversion, unless [any] Loss is caused by Owner's fraud, willful injury or willful violation of law." Hilburn has alleged willful injury by Storage Trust.

(Tex. App.—Corpus Christi 1994, writ denied). Ordinarily, estoppel is not grounded on a promise to do something in the future. *Citizens Nat'l Bank at Brownwood v. Ross Constr. Co.*, 146 Tex. 236, 206 S.W.2d 593, 595 (1947); *Stanley v. CitiFinancial Mortg. Co.*, 121 S.W.3d 811, 820 (Tex. App.—Beaumont 2003, pet. denied). Promissory estoppel is an exception to this rule, which includes the following elements: a promise, foreseeability by the promisor of reliance on the promise, and substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Jones v. Landry's Seafood Inn & Oyster Bar-Galveston, Inc.*, 328 S.W.3d 909, 913 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

The supreme court has listed a myriad of torts that the economic loss rule does not bar, including "negligent misrepresentation, legal or accounting malpractice, breach of fiduciary duty, fraud, fraudulent inducement, tortious interference with contract, nuisance, wrongful death claims related to loss of support from the decedent, business disparagement, and some statutory causes of action." *Sharyland*, 354 S.W.3d at 418–19. The key is whether the defendant owes a duty independent from the contractual duty. *See id*.

Here, Hilburn alleged a promise—not to worry about moving his possessions—along with action by Storage Trust inconsistent with Storage Trust's intention to clear out the storage units—accepting the rent after the storage units had been flooded. These contentions are not related to Storage Trust's failure to perform a contractual duty—they are common law duties that arose from renunciation of a purported known right (clearing the storage units), inducing Hilburn not to move his property by telling him he did not need to worry, and promising not to dispose of his property. *See Chapman*, 445 S.W.3d at 719; *Sharyland*, 354 S.W.3d at 418–19.

11

**DTPA**. Hilburn alleged that Storage Trust's representations and "inconsistent method of disposal" of his property constituted one or more violations of the DTPA. Storage Trust argues Hilburn's DTPA claim is barred under the economic loss rule because Hilburn has alleged only a breach of contract.

Storage Trust relies on a case that involved representations that induced the plaintiff to renew an advertising contract. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996). The supreme court held that the statements amounted to "nothing more than representations that the defendants would fulfill their contractual duty to publish [an advertisement], and the breach of that duty sounds only in contract." *Id*. But Hilburn alleges Storage Trust made representations regarding the disposition of his property that are unrelated to the duty to comply with the contract.

It is not clear from Hilburn's petition what violations of the DTPA he alleges. He alleges only that Storage Trust's "inconsistent representations . . . coupled with [Storage Trust's] inconsistent method of disposal of the [contents of the units] constitutes one or more violations of the [DTPA]."[4] But Storage Trust moved for summary judgment only on the basis that any DTPA claims are barred by the economic loss rule. Under these facts, Storage Trust did not conclusively establish that Hilburn's DTPA claims are barred under the rule.

**Conclusion**. For the above reasons, we conclude that the economic loss rule did not bar Hilburn's conversion, waiver, estoppel, promissory estoppel, or DTPA

---

[4] We note that Storage Trust did not file special exceptions in the trial court and did not otherwise complain below regarding any defects in the allegations regarding purported violations of the DTPA. *See* Tex. R. Civ. P. 91 ("A special exception shall . . . point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to.").

claims. These claims are based on duties that arose from Storage Trust's post-contractual statements and actions independent of any obligation undertaken by Storage Trust in the lease agreements.

## III. Declaratory Judgment

Hilburn requested a declaratory judgment that he paid rent through the end of June 2015. In its motion for summary judgment, Storage Trust conceded that it "does not dispute that [Hilburn] paid rent through the end of June 2015." Hilburn responded that he would accept a stipulation that he paid the June 2015 rent.

Under the Uniform Declaratory Judgments Act (UDJA), a person whose rights, status, or other legal relations are affected by a contract may have a court determine any question of construction or validity arising under the contract and may obtain a declaration of rights under that instrument. *See* Tex. Civ. Prac. & Rem. Code § 37.004(a). The UDJA's purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *See id*. § 37.002(b). To obtain a declaratory judgment, there must be a justiciable controversy as to the rights and status of the parties that the declaration sought will resolve. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 808 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A justiciable controversy involves a real and substantial dispute including a genuine conflict of tangible interests, rather than merely a theoretical disagreement. *HMT Tank Serv.*, 565 S.W.3d at 808.

Based on these facts—where both parties agree on the fact at issue—no case or controversy exists between Hilburn and Storage Trust other than claims for monetary damages against Storage Trust. *See Spring Branch Wildlife Pres. v. Dow Chem. Co.*, No. 14-17-00539-CV, 2018 WL 4868852, at *4 (Tex. App.—Houston [14th Dist.] Oct. 9, 2018, no pet.) (mem. op.). Because there is no justiciable

controversy on this issue, we vacate the trial court's judgment on this issue and dismiss the appeal as to this issue for lack of jurisdiction. *See id*.; *see also Di Portanova v. Monroe*, 229 S.W.3d 324, 327 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

### *Conclusion*

We conclude that the trial court erred in granting summary judgment in favor of Storage Trust as to Hilburn's noncontractual claims, and that the trial court lacked jurisdiction over Hilburn's request for declaratory judgment because there is not a justiciable controversy regarding whether Hilburn paid rent for the storage units in June 2015.[5] We reverse and remand the trial court's judgment in part, vacate the judgment in part, and dismiss the appeal in part for want of jurisdiction.


/s/    Frances Bourliot
        Justice


Panel consists of Chief Justice Frost and Justices Bourliot and Poissant (Frost, C.J., concurring).

---

[5] Hilburn also argues Storage Trust mischaracterized contested facts as undisputed. Because we conclude the trial court erred in granting summary judgment as to Hilburn's contract and noncontractual claims, we need not reach this issue.

14