**Juliane Bridget JONES, Appellant,**

v.

**LANDRY'S SEAFOOD INN & OYSTER BAR–GALVESTON, INC., Appellee.**

No. 14–09–00767–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 16, 2010.

**910**

Matthew P. Nickson, Houston, for appellant.

Robert Edward Perkins, Keith Christopher Bayko, Richard A. Sheehy, Houston, for appellee.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Juliane Bridget Jones appeals a summary judgment in favor of appellee, Landry's Seafood Inn & Oyster Bar–Galveston, Inc. ("Landry's"), in Jones's suit for strict products liability, negligence, breach of implied warranty, and promissory estoppel. We reverse and remand.

## BACKGROUND

On January 4, 2008, Jones and her mother ate lunch at Grotto, a Houston restaurant owned by Landry's. Jones ordered "Oysters Mimmo," which she described in her petition as a "breaded, cooked oyster dish" and more specifically in her summary-judgment affidavit as a dish made of "processed, ground oyster meat." Jones contends she cracked a molar on a "non-comestible, hard object" while eating this dish. The restaurant manager, Callum Gray, who was summoned to the table, inspected the object and stated it was a pearl, but Jones and her mother disagreed the object was a pearl. According to Jones, Gray then told her the restaurant would pay for repair of her tooth. Jones alleges she received dental care the next day in Houston and then subsequent treatment in Chicago, where she is a student.

█ Jones sued Landry's for strict products liability, negligence, breach of implied warranty, and promissory estoppel.[1] As damages, Jones seeks the amount of her dental expenses, pain and suffering, and mental anguish. Landry's filed a motion for summary judgment, seeking traditional summary judgment on the ground that all of Jones's claims are barred by statute and asserting a no-evidence ground on Jones's promissory-estoppel claim. On August 25, 2009, the trial court signed an order granting Landry's motion for summary judgment and ordering that Jones take nothing on her claims.

## TRADITIONAL SUMMARY JUDGMENT

In her first issue, Jones challenges the traditional summary judgment on her claims. A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex.2003). A defendant moving for summary judgment must conclusively negate at least one element of the plaintiff's theory of recovery or plead and conclusively establish each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). If the defendant establishes its right to summary judgment, the burden shifts to the plaintiff to raise a genuine issue of material fact. *Id.* We review a summary judgment *de novo. Knott,* 128 S.W.3d at 215. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in her favor. *Id.*

Landry's moved for traditional summary judgment on the ground that Jones's claims are barred under section 82.004 of the Texas Civil Practice and Remedies Code, which provides in pertinent part:

(a) In a products liability action, a manufacturer or seller shall not be liable if:

(1) the product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and

---

1. Jones also pleaded *res ipsa loquitur,* and Landry's moved for summary judgment on this "cause [] of action." However, *res ipsa loquitur* is simply a rule of evidence by which negligence may be inferred by the jury when the circumstances surrounding the incident constitute sufficient evidence of the defendant's negligence to support such a finding and is not a separate cause of action. *Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex. 1990). Therefore, we will treat the *res ipsa loquitur* pleading as merely a theory to support the negligence claim.

(2) the product is a common consumer product intended for personal consumption, such as:

    (A) sugar, castor oil, alcohol, tobacco, and butter, as identified in Comment i to Section 402A of the Restatement (Second) of Torts; or

    (B) an oyster.

(b) For purposes of this section, the term "products liability action" does not include an action based on manufacturing defect or breach of an express warranty.

Tex. Civ. Prac. & Rem.Code Ann. § 82.004 (West Supp. 2009).

In its motion, Landry's generally asserted Jones's claims are barred under this statute but did not provide supporting argument. In its appellate brief, Landry's seems to advance two reasons Jones's claims are barred under the statute: (1) the object on which she broke her tooth was a pearl, which Landry's characterizes as "an object in an oyster"; or (2) regardless of the identity of the object, "the product that is the basis of this case is an oyster . . . ."

Jones correctly notes Landry's failed to establish as a matter of law that the object on which she broke her tooth was a pearl.[2]

Nonetheless, Jones contends that Landry's failed to prove Jones's claims are barred under section 82.004 regardless of the identity of the object. As Jones explained in her affidavit, the product she consumed was not "a simple 'oyster'"; rather, the product was Oysters Mimmo—"a cooked oyster dish made of processed, ground oyster meat." Further, Jones averred the restaurant manager informed her that the meat was processed before it arrived at the restaurant and the personnel then prepared the dish. Therefore, Jones contends (1) section 82.004 does not apply to her claims because they are based on a manufacturing defect; see id. § 82.004(b); or alternatively (2) even if section 82.004 does apply, Landry's did not establish, much less offer any evidence, that the product at issue is commonly known to be unsafe; i.e., although arguably it is ordinary knowledge that one may become sick from eating a contaminated raw oyster or encounter a pearl in an oyster which is still in its shell, it is not ordinary knowledge that a dish made of processed, ground oyster meat will contain an inedible object, even a pearl. See id. § 82.004(a)(1). We agree with Jones's first contention; thus, we need not address the second contention.[3]

2. In an internal written report of the incident, the restaurant manager described the object as a "very small pearl in oyster" and stated, "[c]ustomer bit into oyster and said that the small pearl cracked her tooth." In Jones's affidavit, she averred the object "did not really look like a pearl to me, and I believe it may have been a contaminant that was mixed or dropped into the oyster dish during shucking, processing, or frying." Jones also presented an affidavit of her mother, who averred that she held the object and it "was about half the size of a cooked long grain of rice, dark brown to black, very hard and sharp . . . sharp enough to feel it might cut my finger" and she told the manager it did not "look anything like a pearl, it's sharp and it's hard like a rock." Landry's did not present evidence demonstrating its manager possessed

some expertise that rendered his opinion conclusive on the identity of the object. Further, although Jones averred the manager kept the object after the incident, Landry's presented no evidence that it had the object tested or examined by any sort of expert on pearls. Accordingly, the evidence merely reflects contrasting opinions by laymen, and thus raises a genuine issue of material fact, regarding the identity of the object.

3. At some points in her appellate brief, Jones suggests her "manufacturing defect" argument applies to all her claims, but, at other points, suggests it applies to only her strict-product-liability action. We liberally construe her brief as presenting the "manufacturing defect" argument relative to all her claims.

In her petition, Jones did not specifically use the term "manufacturing defect" to describe her claims. However, a court considers the substance, not the label, of a claim to determine its nature. *See Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex.App.-Houston [14th Dist.] 2006, no pet.). "A manufacturing defect exists when a finished product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004).

In this case, Jones complains of the manner in which Landry's manufactured the Oysters Mimmo; i.e., the restaurant allowed an inedible object to be incorporated into a dish made of ground oyster meat—whether the object was present when the restaurant received the meat, and the restaurant personnel failed to detect and remove the object while preparing the dish, or whether the restaurant personnel inadvertently placed the object in the dish. *See Stanford v. Dairy Queen Prods. of Tex.*, 623 S.W.2d 797, 805 (Tex. App.-Austin 1981, writ ref'd n.r.e.) (recognizing restaurant employee was "literal 'manufacturer' " of sandwich on which customer became ill in the sense that employee actually assembled various ingredients, processed them, and prepared sandwich from the various ingredients). Therefore, in essence, Jones alleges that the finished product differed in terms of construction and quality from the restaurant's planned output in a manner that rendered it unreasonably dangerous.

In sum, Jones's claims are not barred under section 82.004 because they are based on an alleged manufacturing defect. *See* Tex. Civ. Prac. & Rem.Code Ann. § 82.004(b); *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 434 (Tex.1997) (holding plaintiff's complaint that cigarettes produced by defendant tobacco company contained pesticide residue which caused plaintiff's illness could allege a manufacturing-defect claim; although all cigarettes potentially contain pesticide residue, it is not an ingredient tobacco company intended to incorporate into its cigarettes). Accordingly, the trial court erred by granting traditional summary judgment on Jones's claims. We sustain her first issue.

## No-Evidence Summary Judgment

Because the trial court erred by granting traditional summary judgment on Jones's claims, we must also consider her second issue, challenging no-evidence summary judgment on the promissory-estoppel claim. *See Knott*, 128 S.W.3d at 216 (recognizing that, when trial court does not specify in its order grounds relied on in granting summary judgment, appellate court must affirm if any ground presented to the trial court and preserved for appellate review is meritorious). After adequate time for discovery, a party may move for summary judgment on the ground there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005). The movant must state the elements on which there is no evidence. Tex.R. Civ. P. 166a(i). Unless the respondent produces summary-judgment evidence raising a genuine issue of material fact on the challenged element, the trial court must grant the motion. *Id.; Urena*, 162 S.W.3d at 550.

The elements of a promissory-estoppel claim are a promise, the promisor foreseeing that the promisee will rely on the promise, and detrimental reliance by the promisee. *Simulis, LLC. v. Gen. Elec. Capital Corp.*, No. 14-06-00701-CV, 2008

WL 1747483, at *2 (Tex.App.-Houston [14th Dist.] Apr. 17, 2008, no. pet.) (mem. op.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983); *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex.App.-Houston [14th Dist.] 2007, no pet.)). The basis for Jones's promissory-estoppel claim is her allegation she justifiably relied on the restaurant manager's alleged promise that Landry's would pay her dental bills to repair the broken tooth.[4]

■ In its motion, Landry's asserted Jones has no evidence on the detrimental-reliance element of her promissory-estoppel claim. Specifically, Landry's contended that Jones would have obtained repair of her tooth regardless of whether Landry's promised to pay; thus, Jones can present no evidence she incurred the dental bills in reliance on Landry's alleged promise.

In response to the motion, Jones presented, in addition to her affidavit, a letter she wrote to an unidentified Landry's employee eight days after the incident, requesting reimbursement for her dental bills. In the letter, Jones represented that this was her second request for reimbursement because she had already telephoned Landry's customer-relations department, which refused to pay her dental bills, asserting the "pearl" was "naturally occurring."

According to Jones's affidavit and letter, the following transpired between the incident and the date of the letter: at the restaurant, the manager apologized for Jones's injury, said Jones should immediately seek a dentist, and stated Landry's customer-relations office would contact her to "handle the billing"; the next morning, Jones consulted a dentist in Houston, who opined that the repair entailed a crown and the "large possibility of a root canal" due to "significant trauma"; the dentist placed a temporary crown and took an impression for a permanent crown; the next day, Jones returned to her home in Chicago; and while awaiting the permanent crown, she experienced pain and inability to chew solid food, which affected her work as a music composer. When she wrote the letter, Jones was awaiting the permanent crown and planned to consult a "root canal specialist" to determine if her "nerve had died." She enclosed the bill from the Houston dentist and said "[t]here will be a second bill from the work done in Chicago." In her affidavit, Jones indicated she presently continued to experience soreness and inability to chew without pain due to "surgeries" but could not afford to obtain further treatment.

Relative to the issue of whether Jones relied on the manager's promise, she stated the following in her affidavit:

> Had I not held [Gray's] assurance of payment to be the good faith word and promise of Landry's (which I most certainly did), I would not have taken the exact same steps to get treatment, and would have curtailed the amount of treatment that I received. I most likely would not have immediately gone to see Dr. Ellen Lim, the friend of my mother's who was the first dentist who treated me. I would have considered seeing a cheaper dentist, going to a dental school, or waiting to resolve the situation in Chicago had I known that Landry's would not pay for my tooth. I was following [Gray's] instructions to immediately find a dentist. I expected [Gray] to speak truthfully on behalf of his company.... I took immediate action to find

---

4. Jones did not specifically use the term "promissory estoppel" in her petition, but we conclude, and all parties seem to agree, her factual allegations set forth such a claim. *See Ortiz*, 203 S.W.3d at 421.

a dentist in Houston, because I was following the directions of the manager. I wanted to take care of the issue right away, in direct response to [Gray's] statement that the company would pay for the repair of my tooth.

We conclude Jones presented a genuine issue of material fact regarding reliance on Landry's promise to pay her dental bills by averring she would have curtailed the treatment she received by considering less expensive care or postponing treatment, if not for the promise. Jones directly indicated she incurred at least some of her dental bills—for the initial care she received in Houston the day after the incident—in reliance on Landry's alleged promise to pay. Jones also indicated she obtained some dental care *after* Landry's customer-relations department refused reimbursement because she requested reconsideration before receiving her permanent crown and the referenced "surgeries." Nevertheless, the summary-judgment evidence also raises a fact issue on whether Jones obtained at least some of this subsequent treatment in reliance on Landry's earlier promise, despite its intervening refusal, because it is a reasonable inference that, once Jones received a temporary crown, replacement with a permanent crown was necessary.

Landry's contends that Jones's averments about the different treatment she might have pursued are vague. However, any response to this summary-judgment ground necessarily has somewhat of a speculative aspect because Landry's presented an issue regarding what action Jones would have taken *if* a certain promise had not been made when, according to Jones, the promise was indeed made. Under the circumstances of this promissory-estoppel claim, Jones's averment that she "would have" curtailed the treatment if not for Landry's promise was sufficient to raise a genuine issue of material fact on the detrimental-reliance element although she presented several alternate scenarios she "likely" would have considered.

Finally, Landry's also asserts that Jones did not deny she needed dental care and would have sought the "emergency treatment" regardless of Landry's promise. However, the fact that Jones needed dental care does not constitute evidence she would have necessarily sought the treatment. Further, in her summary-judgment evidence, Jones never used the term "emergency," assuming, without deciding, this term might raise a reasonable inference that a person would have necessarily obtained immediate care, regardless of whether payment was guaranteed.

Accordingly, the trial court erred by granting no-evidence summary judgment on Jones's promissory-estoppel claim. We sustain her second issue.

We reverse the trial court's summary judgment on all of Jones's claims and remand for further proceedings consistent with this opinion.