

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00238-CV

_____

JOSEPH LITTLETON, Appellant

V.

NATIONSTAR MORTGAGE L.L.C., Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-299558-18

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Justice Gabriel

# MEMORANDUM OPINION

This appeal involves a residential-mortgage loan agreement, appellant Joseph Littleton's failure to pay under the terms of the note and securing deed of trust, and appellee Nationstar Mortgage L.L.C.'s attempts to accelerate the indebtedness. Littleton sued Nationstar and raised claims for wrongful foreclosure, fraud, breach of contract, and trespass to try title, but the trial court granted summary judgment in Nationstar's favor. Littleton now argues that material fact issues precluded summary judgment on his claims. Because Littleton failed to raise a genuine issue of material fact on any of his claims, we affirm the trial court's summary-judgment order.

## I. BACKGROUND

### A. THE LOAN AND LITTLETON'S PRIOR LITIGATION

In 1988, Glenn and Glenda Barnes executed a promissory note in favor of Capitol City Savings Association in exchange for an $85,790 loan to buy a home in Arlington (the property). The Barneses also executed a deed of trust for the property to secure the note. Capitol City assigned the note and deed of trust to First National Bank in 1989.

In 1991, the Barneses executed a warranty deed conveying title to the property to Littleton. Littleton signed an assumption deed of trust, agreeing to assume the payment obligations under the Barneses' note and deed of trust. First National Bank assigned the note and deed of trust to BancPlus Mortgage Corporation in 1992.

2

BancPlus subsequently merged with Homeside Lending, Inc., which then merged with Washington Mutual Bank, FA (WAMU).

Littleton signed a loan modification with WAMU in 2005, partially amending and supplementing the note and deed of trust that Littleton had assumed from the Barneses. The modification increased the unpaid principal balance due under the note and deed of trust (and also Littleton's monthly repayment obligation) but did not relieve Littleton of his duties under the assumption deed of trust: "Except as otherwise specifically provided in this [modification], the Note and Security Instrument will remain unchanged, and [Littleton] and [WAMU] will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement." In short, the modification agreement merely increased the amount due under the assumed deed of trust and note and was itself a guaranty agreement.

WAMU, as the successor in interest to Homeside, assigned the note and deed of trust to Mortgage Electronic Registration Systems, Inc. (MERS) in January 2006. A note on the corporate assignment indicates that it was "effective as of 12/30/05." On January 17, 2006, Aurora Loan Services, Inc., as the mortgage servicer for MERS, notified Littleton that MERS had opted to accelerate the debt and that the property would be sold at a February 7, 2006 foreclosure sale unless the indebtedness balance was satisfied. On February 3, 2006, WAMU, again as the successor in interest to Homeside, inexplicably executed an assignment of the deed of trust and the note to Homeside Funding Corporation (HFC) even though WAMU no longer held the note

or the deed of trust.  In any event, WAMU's assignment to MERS occurred before its assignment to HFC, rendering the assignment to HFC "irrelevant."  *Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 225–26 (5th Cir. 2013) (op. on reh'g); *see also Reeves v. Wells Fargo Home Mortg.*, 544 F. App'x 564, 571 (5th Cir. 2013) (per curiam).

Also in February 2006, Littleton filed suit against WAMU,[1] challenging its accounting of Littleton's payments and raising claims for breach of contract and fraud.[2]  In that case, the trial court ordered Littleton to deposit $1,400 per month into the court's registry until the case was resolved.  Littleton eventually nonsuited his claims, and the parties agreed to release the registry funds—$28,304.25—to Countrywide as the loan servicer.  Both Nationstar and Littleton averred that the funds release, which had occurred in 2010, acted as an abandonment of the January 17, 2006 acceleration.

In 2012, MERS assigned its rights under the note and deed of trust to Nationstar.  A few months after MERS's assignment to Nationstar, Littleton filed a Chapter 13 bankruptcy petition and identified Nationstar as having a $226,870.82 secured claim arising from the note and deed of trust on the property.  In his

---

[1]Aurora and Countrywide Home Loans of Texas, Inc. had serviced the loan for WAMU and MERS.  Littleton initially named Aurora and Countrywide as defendants but later nonsuited both and named WAMU as the defendant based on WAMU's status as the holder of the note and deed of trust.

[2]Littleton's petition is not included in the clerk's record for this appeal; however, Nationstar asserted this was the nature of Littleton's 2006 suit against WAMU and its servicers, and Littleton has not disputed this characterization.

4

personal-property schedule, Littleton disclosed that he had a "[p]otential cause of action . . . for fraud, misappropriation of funds, etc." against Nationstar and its predecessors in interest. The bankruptcy court dismissed Littleton's petition on May 20, 2013, after Littleton failed to timely remit the required trustee payments. The dismissal order expressly stated that Littleton's debts, including the note and deed of trust, were "**NOT DISCHARGED** or affected in any manner by this Order."

On November 4, 2013, Littleton filed a second Chapter 13 bankruptcy petition and again identified Nationstar as a secured creditor. He further listed a potential "fraud, misappropriation of funds, etc." cause of action against Nationstar and its predecessors in interest in his personal-property schedule. Seven months later in June 2014, the bankruptcy court dismissed Littleton's petition based on his nonpayment to the trustee. Again, Littleton's debts were neither discharged nor affected by the dismissal.

On February 25, 2014, shortly before Littleton's second bankruptcy petition was dismissed, Nationstar notified Littleton that he was in default of his repayment obligations under the note and deed of trust[3] and that he could cure the default and avoid acceleration of the debt by paying $141,757.31 by March 27, 2014. Littleton did not cure the default, and Nationstar hired an attorney to begin foreclosure

---

[3]The letter stated that his account "is now due for the **03/01/2006** payment, and subsequent payments."

5

proceedings. Nationstar then assigned the deed of trust to U.S. Bank National Association in April 2015, but Nationstar continued to service the debt.

On September 28, 2017,[4] Nationstar, through its attorney and as U.S. Bank's servicer, sent Littleton a notice of acceleration, advising that U.S. Bank had elected to accelerate the maturity of the debt and that the property would be sold at a November 7, 2017 foreclosure sale if the accelerated debt could not be satisfied. Littleton responded by filing a third Chapter 13 bankruptcy petition on November 6, 2017. Littleton did not identify U.S. Bank as a secured creditor in his petition, but he did list a potential lawsuit against Nationstar as a financial asset.

Four months later on March 7, 2018, Nationstar, as U.S. Bank's servicer, filed a motion for relief from the bankruptcy stay based on Littleton's "failure to pay the post-petition monthly installments when due under the Note" and on the fact that the amount due on the note was almost double the property's value. Nationstar asked that the stay be terminated to allow it "to pursue its statutory and contractual remedies, including the taking of any action in order to gain possession of, or foreclose upon, or conduct a short sale of, or accept a deed in lieu as to the Property." At the hearing on Nationstar's motion, the parties agreed on the record to end the stay for foreclosure purposes, leading to the bankruptcy court's May 9, 2018 agreed order terminating the bankruptcy stay:

---

[4]The three-year gap between Nationstar's 2014 default notice and its 2017 notice of acceleration is not explained in the record.

[It is] ORDERED that the automatic stay is terminated effective April 10, 2018. [Nationstar] is authorized to pursue and enforce all of its statutory and contractual rights and remedies, including foreclosure on and repossession of the Property . . . .

[It is] FURTHER ORDERED that Joseph Littleton does not waive any of his rights under the note and deed of trust, or state law.

[It is] FURTHER ORDERED that Joseph Littleton shall vacate the Property by July 23, 2018, subject to a prior resolution of his rights.

[It is] FURTHER ORDERED that Nationstar may immediately commence foreclosure proceedings, including sending all required notices for a foreclosure date not earlier than August 7, 2018.

On the same day as the agreed order, the bankruptcy court denied confirmation of Littleton's Chapter 13 plan and dismissed Littleton as a debtor with prejudice until November 4, 2018. The bankruptcy action was closed on May 31, 2018.

## B. LITTLETON'S SUIT AGAINST NATIONSTAR

On the same day the bankruptcy court lifted the stay and dismissed Littleton as a debtor (May 9, 2018), Littleton filed the instant suit against Nationstar, raising claims for (1) wrongful foreclosure based on "no proper chain of title"[5] and on the fact that Nationstar was barred from foreclosing based on laches, the statute of limitations, and equitable estoppel; (2) fraudulent misrepresentation; (3) common-law fraud; (4) breach of contract; (5) trespass to try title based on his superior right to title; and (6) temporary injunctive relief. Nationstar answered Littleton's petition and raised several affirmative defenses, including limitations and collateral estoppel.

---

[5]This assertion was based on WAMU's assignment to HFC.

7

On July 18, 2018, Littleton filed a motion in the bankruptcy court, seeking to reopen his bankruptcy for a reconsideration of the prior agreed order lifting the stay. The bankruptcy court, after listening to the audio record of the parties' oral agreement and of the hearing on Nationstar's motion to lift the stay, concluded that Littleton "understood the agreement read into the record" and that there was no cause to reopen the bankruptcy. On August 14, 2018, the bankruptcy court approved the trustee's final report and discharged the trustee.

After the bankruptcy issue was resolved, Nationstar filed a combined traditional and no-evidence summary-judgment motion. In its no-evidence motion, Nationstar argued that Littleton had presented no evidence to support his wrongful-foreclosure, fraud, breach-of-contract, and trespass-to-try-title claims. In its traditional motion, Nationstar asserted that it had conclusively negated Littleton's claims and that the claims failed as a matter of law based on the affirmative defenses of standing, estoppel, and limitations. After Littleton responded to Nationstar's motion and after Nationstar filed a reply, the trial court granted Nationstar's motion, without specifying the grounds on which it was based, and ordered that Littleton take nothing on his claims.

## C. APPEAL

Littleton appeals and asserts that the summary judgment was in error based on material fact issues regarding his claims for affirmative relief. In his brief, Littleton first lists five presented issues but then discusses in his summary at least eight issues.

8

His table of contents suggests there are nine issues presented. We will liberally construe Littleton's brief and assume that he is challenging each ground upon which the trial court could have granted summary judgment in Nationstar's favor. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 480 (Tex. 2019); *Garza v. Garcia*, 137 S.W.3d 36, 38 (Tex. 2004). *See generally Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (holding appellant sufficiently briefed challenge to summary judgment by broadly asserting trial court erred by granting summary judgment). We will address all arguments necessary to determine the propriety of the summary judgment but will not try to attach a specific issue number to our conclusions. *See* Tex. R. App. P. 47.1; *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213–14 (Tex. 2020) (per curiam); *El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 316 (Tex. 1999). But because the trial court's order did not specify the grounds upon which it granted summary judgment, "we must affirm the trial court's judgment if any of the theories advanced are meritorious." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *see Jones v. Landry's Seafood Inn & Oyster Bar–Galveston, Inc.*, 328 S.W.3d 909, 913 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

## II.  PROPRIETY OF SUMMARY JUDGMENT

Although Nationstar moved for both a traditional and a no-evidence summary judgment, we generally are to review Nationstar's no-evidence motion first. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). And if no claims survive a no-evidence review, a review of the traditional motion becomes

9

moot. *Id.* But this is not an inflexible rule. *See B.C. v. Steak N Shake Operations, Inc.,* No. 17-1008, 2020 WL 1482586, at *3 (Tex. Mar. 27, 2020) (per curiam). In this case, our review will be more concise by considering each claim to determine if any of the grounds raised by Nationstar, whether in its traditional or no-evidence motion, justify a summary dismissal under the correct standard of review.

## A. STANDARDS OF REVIEW

### 1. No-Evidence Motion

After an adequate time for discovery, Nationstar, as the party without the burden of proof, was entitled to move for summary judgment on the ground that no evidence supports an essential element of Littleton's claim. Tex. R. Civ. P. 166a(i) & 1997 cmt. Because Nationstar carried the burden of proof on its pleaded affirmative defenses, Nationstar could not seek a no-evidence summary judgment on those defenses. *See id.* Nationstar was required, however, to specifically state the elements of Littleton's claims for which no evidence existed. *Parker*, 514 S.W.3d at 219; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court was required to grant the motion unless Littleton produced more than a scintilla of summary-judgment evidence that raised a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

We review the no-evidence summary judgment de novo and examine the entire record in the light most favorable to Littleton, indulging every reasonable inference and resolving any doubts in favor of Littleton. *See Parker*, 514 S.W.3d at 219; *Timpte*

10

*Indus.*, 286 SW.3d at 310; *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam). If Littleton brought forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then the no-evidence summary judgment was improper. *See Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## 2. Traditional Motion

As with a no-evidence summary judgment, we review a traditional summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). As the movant, Nationstar carried the burden to prove that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We consider the evidence presented in the light most favorable to Littleton, indulging every reasonable inference and resolving any doubts in Littleton's favor. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). If Nationstar conclusively negated at least one essential element of Littleton's claim, Nationstar was entitled to a traditional summary judgment on that claim. *See* Tex. R. Civ. P. 166a(b), (c); *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). To the extent Nationstar moved for a traditional summary judgment on an affirmative defense, it was required to conclusively prove, through summary-judgment evidence, all elements of that defense. *Frost Nat'l*, 315 S.W.3d at 508–09; *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008) (per curiam) (op. on reh'g).

11

## B. LITTLETON'S CLAIMS

### 1. Wrongful Foreclosure

The essential elements of a claim for wrongful foreclosure are (1) a defect in the foreclosure-sale proceedings, (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate selling price. *See Buchanan v. Compass Bank*, No. 02-14-00034-CV, 2015 WL 222143, at *5 (Tex. App.—Fort Worth Jan. 15, 2015, pet. denied) (mem. op.). Nationstar asserted that Littleton failed to present any evidence that a foreclosure sale of the property actually occurred with a defect in the sales proceedings. Indeed, Littleton does not dispute that the property has not been sold at a foreclosure sale and that he continues to live there. Littleton's claim is one for attempted wrongful foreclosure, which is not a viable cause of action. *See De La Garza v. Bank of N.Y. Mellon*, No. 02-17-00427-CV, 2018 WL 5725250, at *4 & n.8 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.). Accordingly, the trial court did not err by granting Nationstar judgment as a matter of law on this claim. *See id.* at *4; *see also Lopez v. Wells Fargo Bank, N.A.*, No. 5:18-CV-44, 2020 WL 224485, at *2 (S.D. Tex. Jan. 14, 2020) (mem. & order). Because this claim is not cognizable, we do not address Littleton's affirmative assertions attempting to support

his wrongful-foreclosure claim: superior title, abandonment, limitations, laches, and estoppel.[6]

## 2. Statutory and Common-Law Fraud

Littleton claimed that Nationstar committed statutory and common-law fraud when it and its predecessors in interest withdrew "$28,304.25 from the court registry and ultimately did not apply the funds to Mr. Littleton's account" and when those entities misrepresented the facts "regarding the principal and interest on his loan," which "induce[d]" him to enter into the modification agreement with WAMU. *See* Tex. Bus. & Com. Code Ann. § 27.01.

Statutory fraud under Section 27.01 requires proof that (1) Nationstar made a representation of material fact, (2) that was false, (3) that was made to induce Littleton to enter a contract, (4) that was relied upon by Littleton in entering the contract, and (5) that caused injury. *See id.*; *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding); *Scott v. Sebree*, 986 S.W.2d 364, 371 (Tex. App.—Austin 1999, pet. denied). Common-law fraud requires these elements plus proof that Nationstar made the alleged misrepresentation either knowing that it was false or with recklessness to its truth. *See FirstMerit*, 52 S.W.3d at 758; *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (op. on reh'g); *Larsen v.*

---

[6]Even were we to address these arguments, we would conclude that Littleton failed to carry his summary-judgment burden as cogently argued by Nationstar in its brief.

13

*Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 249 (Tex. App.—Waco 2001, pet. denied). Nationstar asserted that Littleton could produce no evidence of or raise a genuine issue of material fact regarding these elements.

A guaranty agreement secured by real estate, or a modification of such an agreement, is not subject to Section 27.01 because it does not involve the transfer, sale, or conveyance of real property. *See Braley v. BAC Homes Loans Servicing, LP*, No. 3:10-CV-2105-O, 2011 WL 13233558, at *8 (N.D. Tex. July 8, 2011) (order) (collecting Texas cases). In other words, "[a] loan transaction, even if secured by land, is not considered to come under [Section 27.01]." *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied). Here, the assumed note and deed of trust, along with the later supplemental modification, were loan transactions secured by property. Accordingly, Littleton could produce no evidence in support of this non-cognizable claim, and the trial court was required under Rule 166a(i) to grant Nationstar's motion. *See, e.g.*, *Lindsey Constr., Inc. v. AutoNation Fin. Servs., LLC*, 541 S.W.3d 355, 366 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Regarding common-law fraud, Nationstar asserted that Littleton had no evidence of a specific misrepresentation, choosing instead to rely on general averments of misrepresentations regarding his payments and the loan modification, and had no evidence of Nationstar's knowledge of the falsity of these representations. Littleton pointed to his affidavit in which he stated that Nationstar and its

14

predecessors in interest misapplied his payments and then falsely claimed the indebtedness was in default:

> In 1993 I paid my mortgage payments to Bank Plus Mortgage but when Homeside received my loan in 1993, they claimed they never got the payments. This was not true because I made the payments to Bank Plus. I asked Homeside for my payment history documentation but they never gave it to me.
>
> . . . [WAMU] then falsely claimed again that I was behind on my payments. They also refused to show me any documentation.
>
> [WAMU] wanted me to do a loan modification in 2004 . . . that I refused to sign because they would not show me the payment history. One and a half years later, . . . [WAMU] added extra interest and late payments in the modification that I did not have nor owe but I signed the modification . . . because I feared that they would take the house.
>
> After I signed the modification, [WAMU] passed off the loan to Aurora. . . . Aurora claimed I was behind on my payments again [and] refused to send [a payment history] to me. At that point Countrywide took over the loan and claimed I did not make my loan payments which was not true. . . .
>
> . . . The banks took all my money from the court registry.
>
> Some years later, Nationstar . . . claimed they now owned the loan and that I hadn't made payments since 2005. I asked what happened to the [registry] money . . . . They claimed at first they didn't have it but then sent it back to me.

Littleton's affidavit did nothing more than create a mere surmise or suspicion of fact because he failed to include the required factual specificity and detail, such as the time, the place, or the exact nature of the alleged false statements. *See All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 530–31 (Tex. App.—Fort Worth 2009, pet. denied); *see also Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). In

15

other words, Littleton's affidavit was no evidence at all regarding any actionable representations or regarding Nationstar's knowledge and, therefore, did not raise a genuine issue of material fact. Accordingly, the trial court did not err by granting Nationstar's summary-judgment motion on Littleton's claim for common-law fraud. *See, e.g.*, *All Am. Tel.*, 291 S.W.3d at 530–31.

But even if Littleton's fraud claims were not subject to judgment as a matter of law on these bases, Nationstar conclusively established its pleaded affirmative defense of limitations. Both statutory and common-law fraud are subject to a four-year statute of limitations, beginning after the date of accrual. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4); *Burrus v. Reyes*, 516 S.W.3d 170, 193 (Tex. App.—El Paso 2017, pet. denied). Although the accrual date generally is a question of fact, if reasonable minds could not differ on the conclusion to be drawn from the summary-judgment evidence on the issue, the accrual date may be determined as a matter of law. *See Burrus*, 516 S.W.3d at 193.

Nationstar argued that Littleton's fraud claims based on the representations surrounding the modification agreement accrued no later than March 1, 2005. To the extent Littleton's fraud claims were based on the withdrawal of the registry funds, Nationstar asserted limitations began no later than July 21, 2010—thirty days after the withdrawal when Littleton could have ensured the correct application of the withdrawn funds to his account. Littleton argued that limitations had not expired because Nationstar's fraudulent actions were undiscovered until suit was filed:

16

> The fraud [Littleton] complains of is not barred by the statute of limitations because it is current fraud that is occurring at this moment as Nationstar tries to countersue and fraudulently claims lost interest over mortgage payments that were paid into the court registry and then taken out of the registry to pay off the loan balance. . . . These payments were not allocated to [Littleton's] account. . . . Instead Nationstar, as successors in interest to [the] mortgage loan and [by] their own actions, now tries to foreclose based on this additional interest gained by returning the funds and foreclosing. Thus, the statute of limitations runs from the time this suit was filed.

It appears Littleton attempted to invoke the discovery rule to toll the applicable limitations period based on Nationstar's alleged obfuscation of how Littleton's payments were applied, which also allegedly induced the modification. *See Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018). The discovery rule defers the accrual date until Littleton knew, or in the exercise of reasonable diligence should have known, the facts giving rise to his fraud claim. *See id.*; *Univ. of Hous. v. Barth*, 178 S.W.3d 157, 162–63 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Littleton filed his suit on May 9, 2018; thus, Nationstar must have conclusively established that Littleton knew or should have known of any fraud before May 9, 2014. *See Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). In February 2006, Littleton filed suit against WAMU alleging misapplication of his payments under the assumed note, the deed of trust, and the supplemental modification to both; breach of contract; and fraud—the same tenor as his instant claims against Nationstar as WAMU's successor in interest. After the registry funds were released to the loan servicer, Littleton was notified in February 2014 that he had defaulted on his

17

obligations under the note and deed of trust. Additionally, in Littleton's first two bankruptcy petitions (both filed before 2014), Littleton identified as personal property a cause of action for "fraud, misappropriation of funds, etc." against Nationstar and its predecessors in interest. This summary-judgment evidence conclusively established that Littleton knew or should have known through the exercise of reasonable diligence the facts showing Nationstar or its predecessors in interest allegedly misapplied funds or fraudulently induced him to modify the assumed deed of trust and note well before May 9, 2014. *See, e.g., Meredith v. Rose*, No. 05-15-00054-CV, 2016 WL 4205686, at *5–6 (Tex. App.—Dallas Aug. 9, 2016, no pet.) (mem. op.). Thus, the trial court did not err by granting Nationstar's traditional motion for summary judgment on the basis of its pleaded affirmative defense of limitations. *See generally Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57–58 (Tex. 2015) (noting reasonable diligence in the context of limitations ordinarily is fact issue but recognizing "in some circumstances, we can still determine as a matter of law that reasonable diligence would have uncovered the wrong").

### 3. Breach of Contract

To support a breach-of-contract claim, Littleton must show (1) a valid, enforceable contract; (2) he performed, tendered performance, or was excused from performing his contractual obligations; (3) Nationstar breached the contract; and (4) Nationstar's breach caused Littleton injury. *See City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—Fort Worth 2008, pet. dism'd).

18

Nationstar asserted that Littleton's breach-of-contract claim failed as a matter of law because Littleton had not alleged and failed to raise a genuine issue of material fact that Nationstar breached a contract or that Littleton performed or tendered performance under a contract. Littleton responded that Nationstar and its predecessors in interest breached "the mortgage agreement both before and after the loan modification" by refusing to "apply" his payments and thereafter attempting to foreclose. Littleton relied solely on his affidavit.

Littleton's affidavit, which we discussed regarding Littleton's claim for common-law fraud, was not more than a scintilla of evidence supporting his assertions of performance and Nationstar's breach and, therefore, fails to raise a genuine issue of material fact regarding breach of contract. *See, e.g.*, *Tatum v. Wells Fargo Home Mortg., Inc.*, No. 01-13-00855-CV, 2014 WL 7474074, at *6 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op.). The trial court did not err by granting Nationstar's summary-judgment motion on this claim.

### 4. Trespass to Try Title

A claim for trespass to try title is a procedural device by which rival claims to title or right to possession can be adjudicated. *See* Tex. Prop. Code Ann. § 22.001; Tex. R. Civ. P. 783; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 755 (Tex. 2003). To establish this claim as pleaded, Littleton must affirmatively show that he has superior title to the property out of a common source. *See Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004); *see also* Tex. R. Civ. P. 783. Nationstar argued in its summary-

19

judgment motion that Littleton's claim failed as a matter of law because he failed to affirmatively establish his superior right to the property. In response, Littleton relied on his argument that there was a gap in the chain of title surrounding WAMU's assignment to MERS, rendering Nationstar's claim invalid.

Littleton's claims are based on his contention that the holder of the note and deed of trust is HFC, which is not in Nationstar's chain of assignments. Littleton asserts that WAMU's assignment to MERS was invalid because it was filed after the assignment to HFC. But as we previously explained, WAMU assigned the note and deed of trust to MERS before it assigned them to HFC; thus, WAMU's subsequent assignment to HFC is irrelevant to Nationstar's interest in the note and deed of trust. *See Reinagel*, 735 F.3d at 225–26. And because an assignment is effective when signed (or when the assignment itself expressly provides its effective date), the later date of filing of the assignment to HFC does not affect the validity of the previous assignment to MERS. *See Deutsche Bank Nat'l Tr. Co. v. Burke*, 655 F. App'x 251, 254 (5th Cir. 2016). Thus, the assignment from WAMU to HFC is no evidence and does not raise a fact issue that Littleton's claim to title is superior. This is especially true here because Littleton's right to recover under a trespass-to-try-title claim depends on the strength of his own title, not on any weakness of Nationstar's title; thus, Littleton could not raise a fact issue on this claim with evidence that alleged only defects in

Nationstar's title.[7]  *See Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982); *Brooks v. Binger*, No. 14-17-00562-CV, 2019 WL 3023226, at *2 (Tex. App.—Houston [14th Dist.] July 11, 2019, no pet.) (mem. op.).  The trial court did not err by granting Nationstar's summary-judgment motion on this claim.

## 5. Injunctive Relief

Littleton pleaded for injunctive relief based on the merits of his underlying claims.  Nationstar argued that it was entitled to summary judgment on this request because Littleton could not recover on any of his pleaded claims.  Injunctive relief is available only if liability is established under a cause of action.  *See Valenzuela v. Aquino*, 853 S.W.2d 512, 514 n.2 (Tex. 1993); *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied).  Littleton's pleaded claims fail as a matter of law; thus, his injunctive-relief remedy likewise fails.  *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011) (per curiam).

## III.  CONCLUSION

Littleton proffered no evidence to support and failed to establish a genuine, material fact issue on his claims for wrongful foreclosure, fraud, breach of contract, and trespass to try title.  And the dismissal of these claims dooms Littleton's request for injunctive relief.  Based on these conclusions, we affirm the trial court's summary-

---

[7]Littleton attempts to assert his superior right under adverse possession; however, he did not plead this theory in the trial court.

judgment order.  *See* Tex. R. App. P. 43.2(a); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered:  April 23, 2020